IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHEILA MCCOY, Individually and on
Behalf of All Others Similarly Situated                           PLAINTIFF

VS.                          NO.  5:20-cv-5176 PKH

ELKHART PRODUCTS CORPORATION                                      DEFENDANT

RESPONSE TO PLAINTIFFS' MOTION TO FILE AMENDED COMPLAINT
AND BRIEF IN SUPPORT

I.   INTRODUCTION

Plaintiff has conceded that her matter is not appropriate for collective action status and decertification is proper. The proper remedy at this stage upon decertification is dismissal of all opt-in plaintiffs. S*ee Wright v. Pulaski County*, 2010 U.S. Dist. LEXIS 87283 (E.D. Ark. 2010) (dismissing all opt-in plaintiffs without prejudice upon decertification). McCoy, however, proposes a *de facto* collective action under the guise of an Amended Complaint adding forty-three of the opt-in Plaintiffs as named Plaintiffs along with herself. While not formally styled as such, this is a motion to amend the pleadings and should be subject to the standards in Fed. R. Civ. P. 15 and 20, which McCoy does not discuss and cannot meet.

Instead, McCoy makes a half-hearted reference in her opening paragraph to a purported substantial degree of similarity among Plaintiffs based on the fact they all worked shifts, they all clocked in and were all paid hourly. These same immaterial and generic similarities exist in almost any group of manufacturing, production, or shift work employees in the country regardless of employer or alleged FLSA violation. To maintain collective action status, however, Plaintiff must demonstrate the existence of common questions of liability and not generic commonalities that have nothing to do with the FLSA claim.

McCoy does not address Defendant's comprehensive legal analysis and citations to the factual record explaining in detail the individual nature of the liability question among the opt-in plaintiffs. Instead, Plaintiff concedes the case should be decertified and states "certain Plaintiffs" should be permitted to proceed with their individual claims under the style of this case as co-Plaintiffs with McCoy. For the reasons stated below, this request should be denied and the normal remedy of dismissal of the opt-in Plaintiffs should be granted.

## II. ARGUMENT AND AUTHORITY

### A. Motion to Amend Complaint is Untimely

The Court's Final Scheduling Order establishes July 6, 2021 as the deadline for the addition of parties and the amendment of pleadings. [Doc. 17] On this basis alone, McCoy's request to amend should be denied. McCoy does not request any relief from this deadline or explain why such relief would be appropriate.

McCoy's request paints the picture that there is no real procedural difference between adding these individuals as named plaintiffs and their current status as opt-in plaintiffs to a collective action. This is faulty reasoning and highlights the potential for abuse and misuse of the collective action procedure. Moreover, the argument serves to highlight that the dissimilarity of their claims, which makes collective action status inappropriate, also renders inappropriate an attempt to proceed via joinder.

### B. Joinder Of Forty-Three Opt-Ins Is Improper Under Fed. R. Civ. P. 15 and 20

Federal Rule of Civil Procedure 15 requires leave of the Court to amend pleadings at this stage of litigation. Fed. R. Civ. P. 15(a)(2). Leave is not appropriate in this instance as the subject of the amended pleading, adding forty-three additional plaintiffs, is not proper under the permissive joinder provisions of Fed. R. Civ. P. 20.

Under Fed. R. Civ. P. 20, a district court *may* allow persons to join as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Also, the district could should examine whether the addition of the parties will comport with fundamental questions of fairness. *See Hill v. R&L Carriers, Inc.*, 2011 U.S. Dist. LEXIS 54873, *4-5 (N.D. Cal. 2011).

McCoy does not address the requirements of this rule in any respect.

First, the rule is permissive, meaning that additional plaintiffs have no right to join the matter and it is up to the Court's discretion whether to allow them to join. Second, the Defendant's Brief in Support of Motion for Decertification outlined multiple aspects of the opt-in Plaintiffs' claims that made them ill-suited for collective action relief. For these same reasons, Plaintiffs' claims do not arise jointly or severally or from the same transaction or occurrence or series of transactions or occurrences. As pointed out in Defendant's brief, the opt-in Plaintiff's claims must be decided on an individual basis as they are diverse in terms of whether a violation has even occurred and what proof will be necessary to prove or disprove a violation for each claim.

For example, a maintenance worker in the plant who is claiming he is owed overtime for time spent donning and doffing a uniform[1] (*See* Depositions of Dan Williams and Hugh Walker, attached to Motion to Decertify as **Exhibits E** and **I**) is not associated with the same transaction or occurrence as an hourly lead who claims she worked both on and off the clock, before and after the scheduled shift, doing actual work. (*See* Deposition of Teri Borquin, attached to Motion to

---

[1] Despite having this sworn deposition testimony, Plaintiffs include Hugh Walker and Dan Williams as named Plaintiffs with the purported same claims as every other named Plaintiff. This highlights the lack of similarity as to these claims and the inappropriateness of the amendment.

Decertify as **Exhibit B**) Neither of those claims are related to the same transaction or occurrence as the claim of another proposed Plaintiff, an hourly rank and file employee who admitted in his deposition he did no work at all outside of the scheduled shift and joined the collective action out of curiosity without having any grievance concerning his pay. (*See* Deposition of David Wilder, attached to Motion to Decertify as **Exhibit D**) None of these individuals' claims are similar to the "claim" of opt-in Jerry DeMoss who admitted under oath, "I don't believe I am entitled to anything." (*See* Deposition of Jerry DeMoss, attached to Motion to Decertify as **Exhibit N**) Yet, DeMoss is also included in the proposed Amended Complaint.

Defendant's arguments regarding the diversity of the opt-in Plaintiffs' claims were based only on a sampling of depositions. The depositions were intentionally a sampling as the main issue was the appropriateness of collective action status. Only twelve of the proposed forty-three new Plaintiffs were deposed. Therefore, the true nature of the claims of the other thirty-one are unknown, and in light of the diverse nature of the known claims of the deponents, McCoy cannot demonstrate that their claims meet the standard required by Rule 20.

McCoy's concession that the case should be decertified is inconsistent with the argument that the individual claims of the forty-three proposed named Plaintiffs are sufficiently similar to proceed as co-Plaintiffs under Rule 20. What McCoy is proposing is a *de facto* collective action under a different procedural guise now that she has procured consents from purported opt-in Plaintiffs. This is improper. Either the case should proceed collectively or it should not. McCoy has agreed that the matter should be decertified, and she should be held to the consequence of that decision – proceeding individually with her own individual case.

Not only do the claims of the proposed named Plaintiffs lack commonality of the same transaction or occurrence or common questions of fact or law, but the Court should consider the

fundamental questions of fairness this maneuver raises. *See Hill, supra.* Contrary to McCoy's argument, there is no efficiency in allowing these Plaintiffs to proceed under one case style. Regardless if this case proceeds with forty-four named plaintiffs or forty-three individual cases are filed – without collective action status, there will be have to be forty-four separate mini-trials to determine any liability to any particular Plaintiff as well as the amount of any damages.

Allowing forty-four Plaintiffs to bring forty-four individual claims against the Defendant all in one case is fundamentally unfair and prejudicial to the Defendant, especially since the parties now agree that collective action status is inappropriate. Allowing McCoy to proceed with this pseudo-collective action with forty-three named Plaintiffs is an unfair advantage to her and her counsel. McCoy and her counsel get all the benefit and relief of a collective action without having to meet the standards required by the FLSA. This bears greatly on the value of the matter and the value of any attorneys' fees that might be ultimately awarded to McCoy or the co-Plaintiffs. This increased value, however, is artificial in that it is only tied to the joint nature of the case under the original style. McCoy and her counsel are attempting to use the Court and the Rules to hold together a case that has no basis to be held together.

If McCoy were truly only concerned with efficiency, then she would have not allowed Plaintiffs such as Wilder to join the case to merely add numbers. Wilder has admitted he did not no work outside the shift. (Wilder Dep. *supra*) If the concern is efficiency, McCoy would not have included Plaintiffs such as Walker and Williams who admit their only claim is a clearly meritless donning and doffing claim. (Walker and Williams Dep. *supra*) If the concern is efficiency, McCoy would not have included Jerry DeMoss as a co-Plaintiff who flat admitted in his deposition, "I don't believe I'm entitled to anything." (DeMoss Deposition, p. 25, attached to Motion as Exhibit N) Likewise, Jason Turner is a proposed Plaintiff though the frailty of this

claim was pointed out in the Brief in Support of Motion to Decertify. [Doc. 53, pp. 20-22]. Turner testified to only de minimus work outside the buzzer, but claimed he was owed for punch-to-punch because walking and waiting are "work" in his mind. *Id.* These five individuals represent more than 10% of proposed co-Plaintiffs and a full third of the individuals who have given depositions so far. That aptly demonstrates joinder is no more appropriate than collective action status.

Instead of these claims, and perhaps others, being exposed as meritless when prosecuted on an individual basis as they should be, McCoy is asking they all be thrown into the same bucket to build the number of plaintiffs and artificially add value to the case. The Court should deny McCoy's maneuver due to this fundamental unfairness.

An Amended Complaint adding these five Plaintiffs (Williams, Walker, Wilder, Turner and DeMoss) should also be denied as futile given they have no chance of success on the merits in light of their deposition testimony cited above. *See Emory v. Texas State Bd. of Medical Examiners*, 748 F.2d 1023 (5th Cir. 1984).

Further, masking these forty-four individual claims as one lawsuit prejudices the Defendant's ability to seek full relief it might be entitled to. For example, if the case proceeds collectively, Defendant anticipates that many, if not most all, claims will be found to be without merit. (At least five of the twelve deposed have been shown to be without merit on their face.) If these claims were filed individually, Defendant would clearly be the prevailing party and entitled to certain costs, at a minimum. *See* Fed. R. Civ. P. 54(d). This prevailing party status is muddled, however, when the claims that Defendant prevails on are mixed in with unrelated and dissimilar other individual claims where a Plaintiff might prevail. Similarly, the question of attorneys' fees owed to McCoy or other particular opt-ins is muddled when some Plaintiffs prevail and others do

not. This results in prejudice to Defendant that it might be faced with a fee petition including fees spent litigating against claims it actually won.

Requiring each opt-in Plaintiff to file their own suit promotes judicial efficiency in another way. Plaintiff and counsel will be required to weigh the risks and potential costs of filing an individual claim they suspect, or know based on discovery, to be without merit. This reduces the chances that known meritless claims will waste the Court's time and resources. With McCoy's suggested method, there is little risk to weigh in including all claims, regardless of merit, as it only adds value to the case to have a large number of Plaintiffs in one case. Those meritless or weak claims can "hide" in the group with the others and still add some value to the case as a whole despite having no real merit. This is contrary to notions of efficiency and fairness.

Finally, allowing these forty-three individuals to proceed under one case style does not necessarily reduce or streamline the litigation related to the original conditionally certified collective action. For reasons that McCoy does not state, she asks the Court to dismiss twenty-three of the sixty-six remaining opt-in Plaintiffs without prejudice. McCoy does not explain why the forty-three who are included are entitled to preferential treatment. In any event, the individuals who McCoy is asking to be dismissed could each file their own individual case. Thus, the requested pseudo-collective action will not necessarily wrap up the litigation. Therefore, all the opt-in Plaintiffs should be treated the same – they should dismissed.

    **C.**    **Dismissal Is the Appropriate Remedy For The Opt-In Plaintiffs And McCoy's Authority For Adding Named Plaintiffs is Inapplicable**

As McCoy now agrees that a collection action is improper and should not proceed, the appropriate remedy is to dismiss those individuals who joined this matter under the auspices of opt-in Plaintiffs to a collection action. *See Wright, supra.*

7

McCoy's authority for amending her Complaint to add these individuals as co-Plaintiffs is inapplicable and does not stand for the proposition that an amendment is appropriate. McCoy cites four Arkansas District Court cases for the proposition that proceeding in this manner is appropriate in light of a finding that a collective action was not. Review of each demonstrates McCoy has misstated and misapplied the holdings.

In *Burley v. Central Arkansas Area Agency on Aging, Inc.*, Judge Marshall specifically stated in one sentence that he was directing the Clerk to add the *five* opt-ins as named plaintiffs because there was "no need for group litigation." 2021 U.S. Dist. LEXIS 104040 (E.D. Ark. 2021)(emphasis added). Notably, the defendant there did not file a motion to decertify, meaning the defendant did not have any objection to the matter proceeding with the five opt-ins. There was no discussion of the appropriateness of an amended pleading either under Rule 15 or 20. The maneuver in *Burley* was a *sua sponte* decision from the trial judge to simplify the case in light of the small number of opt-ins and the lack of objection from the Defendant to proceeding as a collective action. None of those factors are present here. Elkhart does object to a collective action, regardless if it is the name of a formal FLSA collective action or forty-three improperly joined individual plaintiffs under Rule 20.

Judge Marshall's decision in *Carden v. Logan Centers, Inc.* is similar. In a January 5, 2021 Opinion denying the Defendant's Motions for Summary Judgment, Judge Marshall concluded by asking the parties to file a joint status report by January 15 "on whether, given the small number of people involved, the groups are needed for trial." In the Joint Status Report [Doc. 82], the parties stated, "1. The Parties agree that group proof is not the most efficient for trial. 2. Plaintiffs request opt-ins be made individual parties." In the January 22, 2021 Order McCoy cites, Judge Marshall directs the five opt-ins in that matter be made named plaintiffs, without discussion. Like

8

*Burley*, this was a handful of individuals involved with no dispute as to their similarity or appropriateness for group litigation –whether as a collective action or individually named co-plaintiffs.

McCoy correctly quotes Judge Marshall's text entry Order in *Keaton v. Gamma Healthcare, Inc.* In that matter, five of the sixteen potential class members opted in. This was a misclassification case where all the plaintiffs had the same job. Because the issue of liability was exactly the same for all five, there was no motion for decertification filed in that matter. With no objection from Defendant to proceeding in a collective manner, the Court properly converted the case to a small multi-plaintiff case.

In *Rorie v. WSP2, LLC*, there were three opt-ins in addition to the two named Plaintiffs. In the first paragraph of Judge Brooks' August 2, 2021 Order, he states the Defendants "do not necessarily object to allowing the Opt-In Plaintiffs to become plaintiffs" so long as additional discovery is allowed. 5:20-cv-5106-TLB, Doc. 50 (W.D. Ark. August 2, 2021)(internal quotations omitted). Here again, there were five or less opt-in plaintiffs involved and no objection from the Defendant to allowed them to proceed as named plaintiffs. The underlying case in *Rorie* involved proper pay for untipped work performed by tipped employees and a question of an improper tip pool. Thus, the question of liability was common to all plaintiffs. None of that is true in this matter.

McCoy omits several key facts from the California District Court decision in *Hill v. R+L Carriers, Inc.*, 2011 U.S. Dist. LEXIS 54873 (N.D. Cal. 2011). Initially, the Court had already decertified the collective action and dismissed the claims of the fifty-two opt-in Plaintiffs who had filed consents. The cited decision was from a single, opt-in plaintiff who wished to proceed individually along with the two named plaintiffs. Immediately after the quoted sentence in McCoy's brief regarding joinder, the Court explained, "Plaintiffs seek to add only one additional

9

individual to the action." The Court found relevant and relied on the fact only one, and not a large number, of the opt-in plaintiffs were seeking to stay in the matter.

The Court in *Hill* also analyzed the proposed amendment under Fed. R. Civ. P. 15 and 20. The Court went through a discussion of the requirements of Rule 20, such as the plaintiffs must assert rights arising out of the same transaction or occurrence and there must be common questions of fact or law. The Court also pointed out that a district court must examine whether permissive joinder would comport with the principles of fundamental fairness. As outlined above, Rule 20 does not support allowing joinder of forty-three plaintiffs here. Importantly, *Hill* also stands for the general rule that the appropriate remedy after a decertification is dismissal.

All of these authorities stand for the proposition that upon decertification of a collective action, dismissal of the opt-in Plaintiffs is the norm. *Wright*, *supra*; *Hill*, *supra*. There were unusual circumstances in those cases that warranted deviating from the norm—e.g., small number of plaintiffs and no objection from defendant. None of those factors are present here. McCoy is asking that forty-three of the opt-ins be allowed to join, all with various and diverse claims for relief along with diverse defenses available to each claim. This request is made over Defendant's objection. The Court should follow the normal practice after decertification and dismiss the claims of the opt-in Plaintiffs.

### D. McCoy's Maneuver Should Be Rejected As a Misuse and Abuse of The Collective Action Procedure

McCoy's request should also be considered and rejected in the overall context of the case. McCoy moved for conditional certification status on January 12, 2021, after filing the lawsuit in October 2020. [Doc. 18]. In that motion, McCoy represented to the Court the matter was appropriate for conditional certification. Before the motion was even filed, McCoy procured and filed consents to join for eight opt-in Plaintiffs. Attached to that Motion, McCoy attached affidavit

testimony from some of these opt-in Plaintiffs who swore they were aware of others who were similarly situated in terms of working outside their scheduled shift. The affiants gave other details about their work procedures and those of others, some of which were accurate and some of which were not.

Based on these representations, the Court granted the motion and allowed McCoy to send out notices and consents to 341 of individuals to solicit them to join this matter as a collective action. Based on those notices, seventy-seven individuals joined the conditionally certified collective action.

The parties engaged in discovery, much of which was for the purpose of determining if a collective action was appropriate. In the depositions, many of the affiants gave testimony that either was inconsistent with their affidavit altogether or at the very least, revealed that their affidavit testimony was misleading regarding the appropriateness of a collective action. (See Discussion in Brief in Support of Motion for Decertification at pp. 9-22) Based on this discovery, Defendant moved to decertify the collective action, pointing out multiple examples and reasons why a collective action was not appropriate. Most, if not all, of this information was available to McCoy and her counsel through access to the opt-in Plaintiffs.

McCoy's response to this motion and discovery was to concede collective action relief was not appropriate. There was no explanation in her response why collective action relief was ever sought in the first place in light of that concession or why the collective action claims were not withdrawn voluntarily when discovery did reveal or should have revealed they were not supported with proof. As a result, Defendant had to expend the resources to compile and file a significant brief to request decertification.

11

McCoy has no use for the collective action procedure anymore, however, as she has gotten what she wanted out of the exercise - numbers. Numbers that add value to the case artificially that were obtained under the now debunked claim that the claims of the potential plaintiffs were the same. The only reason there are now forty-four willing plaintiffs instead of the handful at the beginning is that she was allowed to send notices to them, under the style of this case telling them they may be entitled to money just because they worked at Elkhart. This is the textbook example of improperly using the collective action procedure tool to stir up litigation. To drive the point home, McCoy is proposing to add five Plaintiffs without viable claims, including Patrick Wilder, who admits to joining the case out of curiosity upon getting the notice. (DeMoss Dep. p. 25, *supra; Wilder Dep.* pp.18-19 attached to Motion to Decertify as **Exhibit D**) ("Maybe there was. Maybe there wasn't [violations."])

This maneuver represents a misuse and abuse of the collective action process that the Court should not allow. The Court should instead hew to the normal procedure of dismissing all opt-in Plaintiffs upon decertification.

## CONCLUSION

This matter cannot properly be litigated as a group or collectively. The name or the style of the procedure is immaterial to this reality, whether it is a collective action under the FLSA or the principles of Rule 20 joinder. Each individual claim is based on a unique set of events— whether and how much a Plaintiff chose to work outside the scheduled shift despite knowing not to-- and must be litigated individually. The Court should decertify this matter, dismiss the opt-in Plaintiffs, and deny McCoy's late request to amend the pleadings.

Respectfully submitted,<br>
Daniel L. Herrington (ABA# 95166)<br>
Friday, Eldredge & Clark, LLP<br>
2000 Regions Center<br>
400 West Capitol Avenue<br>
Little Rock, AR 72201-3493<br>
501-370-1571<br>
501-244-5382 Fax<br>
Herrington@fridayfirm.com

FEC\46863\0001\8733919.v1-9/13/21